No. 23-10128

In the

# United States Court of Appeals
## for the Eleventh Circuit

Amir Meshal,
*Plaintiff-Appellee,*

v.

Christopher Wright, *et al.*,
*Defendant-Appellants.*

On Appeal from the United States District Court for the
Southern District of Georgia, Savannah Division.
No. 4:22-CV-010 — R. Stan Baker, *Judge*

**BRIEF OF APPELLANTS**

Christopher M. Carr
 *Attorney General of Georgia*
Loretta Pinkston-Pope
 *Deputy Attorney General*
Susan E. Teaster
 *Senior Asst. Attorney General*
Rodney H. Atreopersaud
 *Assistant Attorney General*

Office of the Georgia
 Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3627
ratreopersaud@law.ga.gov

*Counsel for Appellants*

*Meshal v. Wright*, No. 23-10128

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Atreopersaud, Rodney H., Counsel for Defendants-Appellants;

Baker, R. Stan, United States District Judge;

Carr, Christopher M., Counsel for Defendants-Appellants;

Chatham County Attorney's Office;

Chatham County Sheriff's Office;

Ewulonu, Nneka, Counsel for Plaintiff-Appellee;

Georgia Department of Public Safety;

Hart, Ralph, Counsel for Defendant Frink;

Frink, Derrick, Defendant;

Isaacson, Cory, Counsel for Plaintiff-Appellee;

Janufka, Joshua J., Defendant-Appellant;

Lopez-Delgado, Andres, Counsel for Plaintiff-Appellee;

Meshal, Amir M., Plaintiff;

Oglesby, Keith, Defendant-Appellant;

Pope, Loretta-Pinkston, Counsel for Defendants-Appellants;

*Meshal v. Wright*, No. 23-10128

Pretorius, Andre, Counsel for Defendant Frink;

Teaster, Susan E., Attorney for Defendants/Appellants;

Ray, Christopher L., United States Magistrate Judge;

Wright, Christopher, Defendant-Appellant.


/s/ *Rodney Atreopersaud*
RODNEY H. ATREOPERSAUD

## STATEMENT REGARDING ORAL ARGUMENT

The Appellants, Georgia state troopers, request oral argument. Deciding whether the district court erred in denying qualified immunity requires a fact-intensive inquiry in the Fourth Amendment context, and oral argument would give counsel the opportunity to directly address the Court's questions. *See Rogers v. Miller*, 57 F.3d 986, 989 (11th Cir. 1995).

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument................................................i

Jurisdiction .................................................................. vii

Statement of Issues ........................................................ 1

Introduction ................................................................ 2

Statement of the Case...................................................... 4

    A. Factual Background .............................................. 5

    B. Proceedings Below................................................ 8

    C. Standard of Review .............................................. 9

Summary of Argument .................................................... 9

Argument .................................................................. 11

    I. The district court should have granted qualified immunity
to the officers with respect to the duration of the traffic
stop. ...................................................................... 14

        A. By failing to consider the totality of the circumstances,
the district court wrongly held that the officers lacked
reasonable articulable suspicion. .................................. 14

        B. The officers are at the very least entitled to qualified
immunity. .................................................................. 21

    II. The district court should have granted the officers qualified
immunity with respect to their search of the truck. .......... 26

        A. The district court applied the wrong legal standard
when it held that the officers lacked probable cause. .. 26

# TABLE OF CONTENTS
## (continued)

**Page**

B.  The officers are at least entitled to qualified immunity
     because they had arguable probable cause to search... 28

Conclusion......................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page(s)**

*Alabama v. White*,
496 U.S. 325 (1990) ..................................................................... 15

*City of Escondido v. Emmons*,
139 S. Ct. 500 (2019) .......................................................3, 23, 29

*Corbitt v. Vickers*,
929 F.3d 1304 (11th Cir. 2019) ...........................................12, 13

*District of Columbia v. Wesby*,
138 S. Ct. 577 (2018) ..........................................................*passim*

*Flores v. Satz*,
137 F.3d 1275 (1998) .................................................................. 9

*Fox v. Tyson Foods, Inc.*,
519 F.3d 1298 (11th Cir. 2008) ................................................ vii

*Govan v. City of McIntyre*,
2018 WL 3762997 (M.D. Ga. Aug. 8, 2018) ............................. 22

*Illinois v. Caballes*,
543 U.S. 403 (2005) .................................................................. 23

*Illinois v. Wardlow*,
528 U.S. 119 (2000) .................................................................. 10

*Jackson v. Sauls*,
206 F.3d 1156 (11th Cir. 2000) ..................................2, 10, 21, 22

*Kashem v. Barr*,
941 F.3d 358 (9th Cir. 2019) .................................................... 20

*King v. Pridmore*,
961 F.3d 1135 (11th Cir. 2020) ...........................................13, 24

*Kisela v. Hughes*,
　138 S. Ct. 1148 (2018) ..........................................................23, 29

*Lee v. Ferraro*,
　284 F.3d 1188 (11th Cir. 2002) ............................................11, 28

*Mitchell v. Forsyth*,
　472 U.S. 511 (1985) ................................................................. vii

*Rodriguez v. United States*,
　575 U.S. 348 (2015) ...........................................................*passim*

*Rogers v. Miller*,
　57 F.3d 986 (11th Cir. 1995) ....................................................... i

*Shaw v. City of Selma*,
　884 F.3d 1093 (11th Cir. 2018) ................................................. 12

*Summit Med. Assoc. P.C., v. Pryor*,
　180 F.3d 1326 (11th Cir. 1999) ……………………………………28

*United States v. Acosta*,
　363 F.3d 1147 (11th Cir. 2004) .....................................16, 17, 18

*United States v. Braddy*,
　11 F.4th 1298 (11th Cir. 2021)............................................16, 26

*United States v. Gonzalez-Zea*,
　995 F.3d 1297 (11th Cir. 2021) .....................................14, 15, 16

*United States v. Hernandez*,
　418 F.3d 1206 (11th Cir. 2005) ................................................. 14

*United States v. Lewis*,
　674 F.3d 1298 (11th Cir. 2012) ................................................. 15

*United States v. Powell*,
　222 F.3d 913 (11th Cir. 2000) .................................................. 18

*United States v. Purcell*,
   236 F.3d 1274 (11th Cir. 2001) .................................................. 23

*Vinyard v. Wilson*,
   311 F.3d 1340 (11th Cir. 2002) ...........................................11, 12

*Washington v. Durand*,
   25 F.4th 891 (11th Cir. 2022)..........................................4, 26, 27

*Wood v. Kesler*,
   323 F.3d 872 (11th Cir. 2003) ................................................... 28

**Statutes**

28 U.S.C. § 1291............................................................................. vii

28 U.S.C. § 1331............................................................................. vii

42 U.S.C. § 1983................................................................... vii, 4, 8

## JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because the plaintiff asserted civil rights claims against the state defendants under 42 U.S.C. § 1983.

This Court has appellate jurisdiction under the collateral order doctrine and 28 U.S.C. § 1291 over the denial of qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), and "inextricably intertwined" Fourth Amendment issues, *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302 (11th Cir. 2008).

This appeal is timely because the district court's order denying Appellants' motion to dismiss based on qualified immunity was entered on December 29, 2022, doc. 36, and Appellants filed a notice of appeal on January 11, 2023. Doc. 37.

## STATEMENT OF ISSUES

Did the district court err when it denied law enforcement officers qualified immunity without identifying a single "materially similar case" clearly establishing that the Fourth Amendment prohibits officers from extending a lawful traffic stop and searching a vehicle when the truck driver was listed on a suspected-terrorist No Fly List, had an arrest record, and had just made a large delivery to the site of the Super Bowl?

## INTRODUCTION

The Fourth Amendment does not prohibit officers from briefly extending a lawful traffic stop to investigate the driver's activities when they have "reasonable, articulable suspicion that criminal activity is afoot." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000). When police officers are alerted to possible further criminal activity in the process of a stop, it is wholly proper for them to take reasonable additional time to investigate.

The police officers in this case extended a lawful traffic stop when they discovered that a truck driver was on the FBI's suspected-terrorist "No Fly List," had been arrested before, and was coming from dropping off a large delivery at the site of the Super Bowl—an event that draws crowds in the hundreds of thousands. The officers used that extra time to call in K-9 teams trained in detecting explosives and narcotics and to contact the FBI for further information. And when both inquiries came back negative, they promptly completed the stop.

Neither the extra time nor the search violated the Fourth Amendment. The officers had a reasonable, articulable suspicion—not just a "hunch"—that the truck driver was involved in serious criminal activity. During a routine traffic stop, officers may investigate whether a driver has any outstanding warrants

2

and is otherwise allowed to operate a semi-truck on a major highway, and the investigation here went little, if any, beyond verifying warrant information. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). In the totality of the circumstances, a reasonable officer could have concluded that the convergence of events made it likely that either contraband or evidence of criminal activity could be found in the truck, and that justified extending the stop.

The district court, however, not only reached the completely opposite conclusion, but went even further and denied the officers qualified immunity, holding that it was *clearly established* by materially similar cases that the officers' actions violated the Fourth Amendment. The district court claimed to rely on materially similar cases, but it concluded—with *no* supporting case law—that these facts could not justify reasonable suspicion or probable cause, and it relied on precedent *only* for the general propositions that *Terry* stops without reasonable suspicion and automobile searches without probable cause violate the Fourth Amendment. The district court thus failed to heed the Supreme Court's "repeatedly" issued warning that courts must "not [] define clearly established law at a high level of generality." *City of*

*Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). The district court thus wrongly denied qualified immunity.

The district court also applied the wrong legal standard when it held that the officers lacked probable cause to search the truck, because it concluded that the officers must show that a reasonable person *would* "belie[ve] that contraband or evidence of a crime will be found," rather than that a "reasonable officer *could* conclude that there was a substantial chance of criminal activity." *Washington v. Durand*, 25 F.4th 891, 899 (11th Cir. 2022) (emphasis added). This Court should reverse the denial of the officers' motion to dismiss.

## STATEMENT OF THE CASE

Amir Meshal sued two Georgia State Patrol officers and the Commissioner of the Georgia Department of Public Service (the officers) under 42 U.S.C. § 1983. The officers moved to dismiss, arguing that they are entitled to qualified immunity because they did not violate Meshal's Fourth Amendment rights and there is no clearly established law to the contrary. The district court denied the motion in part after dismissing the official-capacity damages claims, holding that the officers were not protected by qualified immunity.

## A.  Factual Background

Meshal made a delivery for the halftime show of the Super Bowl in Miami and was driving his semi-truck north through Georgia. Doc. 1 at ¶¶ 10–11. It was a rainy afternoon and Officer Janufka, a Georgia State Trooper, pulled Meshal over for following too close to the vehicle in front of Meshal. *Id.* at ¶¶ 13-14).

After initiating the traffic stop, Officer Janufka approached Meshal's truck, requested license and registration, and explained the reason for the stop. *Id.* at¶ 13. Officer Janufka told Meshal that he planned to issue Meshal a courtesy warning but suggested that they talk in Officer Janufka's car since it was raining. *Id.* at ¶ 14. Meshal sat in the front seat of Officer Janufka car and the officer asked Meshal standard truck-related questions. *Id.* at ¶¶ 17, 22. At this point, Officer Janufka learned that Meshal had just made a delivery for the halftime show of the Super Bowl in Miami. *Id.* at ¶17.

Officer Janufka asked if Meshal had ever been arrested. *Id.* at ¶ 18. Meshal responded that he had been arrested a while back, but that he could not recall exactly why; he believed it was for driving with a suspended license. *Id.* Officer Janufka asked Meshal for permission to search Meshal's truck, but Meshal

refused. *Id.* at ¶ 20. Meanwhile, Officer Oglesby arrived to provide backup, and the officers decided to call for a K-9 unit. *Id.* at ¶¶ 16, 21.

Officer Janufka left Meshal in the front seat of the patrol car for a few minutes, but then returned and asked Meshal to exit the vehicle because "something was wrong." *Id.* at ¶ 22. Meshal exited the vehicle, and Officer Janufka handcuffed him, explaining that Meshal was not under arrest and was only being temporarily detained. *Id.* at ¶ 24. The officers instructed Meshal to sit in the backseat of the patrol car. *Id.* at ¶ 25. Once in the backseat, Meshal saw the word "terrorist" on the computer terminal in the car. *Id.* at ¶ 28.

Meshal has been on the federal government's "No Fly List" of suspected terrorists since 2009. *Id.* at ¶¶ 29, 47. Those on the list are barred from flying to, from, or through United States airspace. *Id.* at ¶ 47. The Transportation Security Administration maintains the No Fly List, a subset of a federal consolidated terrorist watchlist. The FBI's Terrorist Screening Center maintains the overall watchlist. *Id.* at ¶ 48. Individuals are nominated to the list by a federal law enforcement agency, a federal intelligence agency, or a foreign government agency. *Id.* at ¶ 49. Nominations must meet a "reasonable suspicion" standard

6

based on "articulable intelligence or information which, based on the totality of the facts…reasonably warrants a determination that the subject is known or is suspected to be (or has been) knowingly engaged in conduct constituting … terrorism or terrorist activities." *Id.* at ¶ 50. The Terrorist Screening Center provides the watchlist to National Crime Information Center, which in turn provides the information to state, local, and tribal law enforcement agencies. *Id.* at ¶ 51. Law enforcement officers who look up an individual in the database can learn whether the individual is on the watchlist. *Id.* at ¶ 57. The Operating Manual instructs officers to keep this information confidential, and reminds officers that they will need additional "evidence of a violation of federal, state or local statutes" to detain or arrest an individual. *Id.* at ¶ 59. It also warns officers to approach anyone on the watchlist "with caution." *Id.*

When Officer Janufka reentered the car, he told Meshal that narcotics and explosives-detecting K-9 teams were on their way. Because Meshal had seen the computer report, he asked if the officers were concerned in part because he was on the No Fly List, and he tried to explain why he was on the watchlist. *Id.* at ¶ 29. Officer Janufka asked Meshal if he had any explosives, weapons,

drugs, or contraband, and Meshal responded that he did not. *Id.* at
¶ 31.

Approximately thirty minutes after Meshal was handcuffed
and placed in the backseat of Officer Janufka's vehicle, the K-9
unit arrived. *Id.* at ¶ 32. They searched around the truck, near
Meshal, and eventually inside the cabin of the truck. *Id.*, at ¶¶ 33-
35.

After the search was over, Meshal and all of the officers began
talking about his work and the challenges of being on the
watchlist. *Id.* at ¶ 37. The K-9 officers eventually left the scene,
and Officer Janufka told Meshal that they were now "just waiting
on a call from the FBI." *Id.* at ¶ 39. While they waited, the officers
and Meshal chatted for about fifteen minutes. *Id.* at ¶ 40. One of
the officers walked away to take a phone call. When the officer
returned, he gave Meshal a citation and told Meshal that he was
free to leave. *Id.* at ¶¶ 39-40. The stop—from start to finish—took
around ninety minutes. *Id.* at ¶ 44.

## B.  Proceedings Below

Meshal sued the officers under 42 U.S.C. § 1983, claiming
that they had violated his Fourth Amendment rights by
unlawfully extending a lawful traffic stop and searching his truck
without probable cause. *Id.* at 15-17. The officers moved to

8

dismiss, arguing that they are entitled to qualified immunity because Meshal had not shown that the stop amounted to a Fourth Amendment violation, and because he had certainly failed to produce any clearly established law to support his claim. Doc. 14.

The district court denied qualified immunity to Appellants and held they violated Meshal's clearly established constitutional rights. The district court found that the officers did not have reasonable suspicion, or even arguable reasonable suspicion, to detain Meshal for further investigation. Doc. 36 at 25. It also found that the officer did not have probable cause, or even arguable probable cause, to search Meshal's truck without a warrant because the officer had no reason to believe that there was a fair probability that contraband or evidence of a crime will be found. *Id.* at 26.

### C.   Standard of Review

The denial of qualified immunity in a motion to dismiss is reviewed *de novo*. *Flores v. Satz*, 137 F.3d 1275, 1277 (1998).

## SUMMARY OF ARGUMENT

This Court should reverse the decision below because the officers are entitled to qualified immunity.

**I.** The district court should not have denied the officers qualified immunity for extending the traffic stop, because they acted with reasonable, articulable suspicion: Meshal was on the suspected-terrorist No Fly List, had prior arrests, and was driving a truck back from making a delivery to the site of the Super Bowl. In fact, waiting for an all-clear call from the FBI is not unlike a routine check for warrants after a traffic stop authorized by law. Both inquiries seek to determine whether the vehicle is being operated on the road safely. *Rodriguez*, 575 U.S. at 355. Moreover, the officers were allowed to extend the stop to investigate because they had reasonable suspicion that other wrongdoing was possibly afoot. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

And because they at least had arguable reasonable suspicion to investigate whether Meshal posed a credible threat, they are entitled to qualified immunity. *Jackson v. Sauls*, 206 F.3d 1156, 1165-66 (11th Cir. 2000). The district court cited only district court cases and an unpublished case from this Court—none of which can clearly establish law, and none of which included similar facts anyway. All the cases establish are the broad principles that everyone accepts: that *Terry* stops usually require reasonable suspicion, and that searches usually require probable

cause. Broad principles masquerading as materially similar cases cannot defeat qualified immunity.

**II.** The district court erred in denying the officers qualified immunity for using a K-9 unit to search the truck. The district court applied the wrong legal standard, which imposed a heavier burden on the officers, to hold that the totality of the circumstances did not create probable cause to search the truck. Moreover, because the officers at least established "arguable probable cause" to justify the search, they should be granted qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

## ARGUMENT

Qualified immunity protects governmental defendants sued in their individual capacities when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It applies to officers acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. *Id.* Here, there is no dispute that Appellants were acting within their discretionary authority during their encounter with Meshal. Doc. 21 at 19; Doc. 36 at 22–23. The burden

therefore shifts to Meshal to show that the officers violated his clearly established Fourth Amendment rights. *Vinyard*, 311 F.3d at 1346.

To overcome qualified immunity, Meshal must satisfy a two-step inquiry. *First*, he must establish the existence of a constitutional violation. *Shaw v. City of Selma*, 884 F.3d 1093, 1099 (11th Cir. 2018). *Second*, he must make the more difficult showing that, when the conduct occurred, the existing law "clearly established" that the conduct was unconstitutional. *Id.*; *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). A Fourth Amendment violation is clearly established only if "every reasonable official would understand that what he is doing is unlawful" because existing precedent "placed the constitutionality of the officer's conduct beyond debate." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal citations and quotations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

Meshal must show clearly established law in one of three ways: (1) by pointing to a materially similar case that has already been decided, (2) by pointing to a broader, clearly established principle that should control the novel facts here, or (3) or by

12

showing that his case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Corbitt*, 929 F.3d at 1312. The second and third methods are often conflated and called "obvious clarity" cases. *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020). The case must be so clear that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590.

Not only did the district court mistakenly decline to grant qualified immunity, it was simply wrong on the law. The officers had reasonable suspicion to extend the traffic stop, and the district court held otherwise only by skipping over the totality of the relevant facts. But at the very least, the officers are entitled to qualified immunity because they had *arguable* reasonable suspicion, and the district court erred when it held to the contrary. As to the search of the truck, the same totality analysis shows that the officers had probable cause. And, again, the district failed to produce a single materially similar case to show that the officers lacked even *arguable* probable cause to search the truck, so it should have granted qualified immunity.

I.  **The district court should have granted qualified immunity to the officers with respect to the duration of the traffic stop.**

A.  **By failing to consider the totality of the circumstances, the district court wrongly held that the officers lacked reasonable articulable suspicion.**

An officer may extend a lawful traffic stop to investigate further when "the facts that came to light from the beginning of the stop" give "rise to reasonable suspicion that an additional crime was being committed." *United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005). This authority logically follows from the authority to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1304 (11th Cir. 2021) (quoting *Wardlow*, 528 U.S. at 123). Additional investigation is also authorized when the officers develop reasonable suspicion of *past* criminal activity, including where an officer has "a reasonable suspicion, grounded in specific and articulable facts, that the person the officer encounters was involved in or is wanted in connection with another crime." *Id.* (quoting *United States v. Hensley*, 469 U.S. 221, 229 (1985)).

The reasonable suspicion required for an investigatory detention is not a high bar. It merely asks that officers "articulate

14

something more than an inchoate and unparticularized suspicion or hunch." *Alabama v. White*, 496 U.S. 325, 329 (1990). It "is not concerned with 'hard certainties, but with probabilities.'" *United States v. Lewis*, 674 F.3d 1298, 1304 (11th Cir. 2012) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Indeed, it is "a minimal level of objective justification for making the stop," and it may "be based on commonsense judgments and inferences about human behavior." *Gonzalez-Zia*, 995 F.3d at 1303. Moreover, reasonable suspicion is based on the totality of the circumstances and it "does not require officers to catch the suspect in a crime. Instead, reasonable suspicion may be formed by observing exclusively legal activity." *Harris*, 526 F.3d at 1337.

Here the officers had reasonable suspicion to justify "prolong[ing] the stop." *Rodriguez*, 575 U.S. at 355. The initial traffic stop was lawful, meaning that the officers' actions were "justified at its inception." *Id.*; *see* Doc. 1 at 15–16; Doc. 36 at 16 n.3. They stopped Meshal for driving too close to the vehicle in front of him on a rainy afternoon and, as discussed above, where the officers observe a traffic violation their stop of the driver is supported by probable cause and is constitutional—in other words, justified at its inception. *See* Doc. 1 at ¶¶ 13-14; *see also Harris*, 526 F.3d at 1337.

And during the routine processes of the stop the officers learned information from Meshal that led them to develop a reasonable suspicion of criminal activity. Meshal told officers he had just dropped a delivery using his truck to the site of the Super Bowl. Doc. 1 at ¶¶ 10–11. When the officers asked him if he had ever been arrested, Meshal responded that he had been arrested a while back, could not recall why, but believed it was for a traffic infraction. *Id.* at ¶ 18. After running the standard check for outstanding warrants, *see Rodriguez*, 575 U.S. at 355, the officers learned that Meshal was on the No Fly List of suspected terrorists. *Id.* at ¶ 22. Under the "totality of these circumstances," the officers had an "objective justification … based on commonsense judgments and inferences about human behavior" to detain Meshal and continue their investigation. *Gonzalez-Zia*, 995 F.3d at 1303. And in "examining the totality of the circumstances," this Court has directed district courts to "give[] due weight to the officer's experience" in ferreting out "wrongdoing." *United States v. Braddy*, 11 F.4th 1298, 1311 (11th Cir. 2021).

Further, "[t]here is no rigid time limitation or bright line rule regarding the permissible duration of a *Terry* stop." *United States v. Acosta*, 363 F.3d at 1147 (citing *United States v. Place*, 462 U.S.

16

696, 709–710 (1983) (declining to adopt an "outside time limitation" for *Terry* stop). Rather, the Supreme Court instructs that the inquiry should be "whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* (citing *Sharpe*, 470 U.S. at 686). Here, the officers immediately called the FBI to investigate what they had learned during their encounter with Meshal. And as soon as they received the all-clear from the FBI, the officers gave Meshal the traffic citation and allowed him to leave. Doc. 1 at ¶¶ 22, 24, 29, 31, 38–40. In other words, the officers did not unnecessarily detain Meshal after their investigation was completed. *Acosta*, 363 F.3d at 1147.

But rather than consider the totality of these circumstances, the district court isolated each relevant fact and then explained why, standing alone, it could not justify extending the stop. For example, the district court held that "unusual travel plans do not provide a sufficient basis for an articulable suspicion." Doc. 36 at 19. And it rejected the officer's reliance on Meshal's trip to the Super Bowl site in favor of Meshal's lawful explanation, concluding that the officers could not rely on it to justify their reasonable suspicion. But this Court has held that even

17

"exclusively legal activity" may sustain reasonable suspicion, so the trip to the Super Bowl location is still relevant to the officers' suspicions, particularly when coupled with the information they had that Meshal had been arrested in the past and was on a terrorist watchlist. *Acosta*, 363 F.3d at 1145.

The district court thus erred when it failed consider the "totality of the circumstances" as a whole. *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). The officers had credible information and circumstantial evidence—not just a "hunch"— that justified their investigation into whether Meshal was engaging in criminal activity. Any "reasonable officer" finding out that Meshal was returning from a delivery at the site of the Super Bowl and that he was on the No Fly List of suspected terrorists would detain him and investigate further. *Wesby*, 138 S. Ct. at 586 (2018).

The district court also wrongly concluded that the officers did not have reasonable suspicion because they "disregard[ed] the national database's instructions []" that law enforcement should not "use an individual's presence on the watch list as a basis for extending the duration of an encounter." Doc. 36 at 20. Yet the district court completely ignored the second part of that directive, which states that officers should not detain someone on the watch

18

list "*unless there is evidence of a violation of federal, state or local statutes.*" Doc. 1 at ¶ 59. It was wholly appropriate for the officers to consider Meshal's inclusion on the terrorist watchlist when they decided to extend the detention and contact the FBI.

Indeed, the reasonableness of the officers' actions is also evidenced by the fact that they also followed the other database instructions. The database instructs officers not to inform the individual that he is on the watchlist. Doc. 1 at ¶ 59. Here, the officers did not inform Meshal that he was on the watchlist. Meshal discovered that information by looking at the officer's monitor while he was being kept out of the rain in the officer's car. *Id.* at ¶ 28. The database instructs officers to approach anyone on the watchlist with caution. *Id.* at ¶ 59. After discovering that Meshal was on the watchlist, Officer Janukfa asked Meshal to exit the front seat, handcuffed him, and moved him to the back seat of the car. *Id.* at ¶¶ 22, 24–25. The database instructs officers to call the Terrorist Screening Center as soon as possible and to obtain sufficient information during the encounter to help determine whether the driver has possible ties with terrorism. *Id.* at ¶ 59. Again, the officers did exactly that. They gathered background information, called the Terrorist Screening Center, and waited with Meshal for the all-clear call-back from the FBI. *Id.* at ¶ 17,

39. So contrary to the district court's belief, the officers' reasonable actions tracked the guidelines.

And even if the officers knew only that Meshal was listed on the No Fly List, that alone would be enough to justify their reasonable suspicion. An individual is only placed on the list if the FBI develops a "reasonable suspicion" that he represents a "threat of committing international" or "domestic terrorism" or a "threat of engaging in or conducting a violent act of terrorism." Doc. 1 at ¶ 50, *see also Kashem v. Barr*, 941 F.3d 358, 366 (9th Cir. 2019). Meshal's placement on the No Fly List was supported by "reasonable suspicion" based on the totality of the facts gathered by intelligence officials who placed him on the list, and that is far more than a hunch that Meshal was or had engaged in criminal activity. Doc. 1 at ¶ 50.

Additionally, the Supreme Court has held that officers may detain a driver after a traffic stop for as long as it takes the officers to complete "tasks tied to the traffic infraction." *Rodriguez*, 575 U.S. at 353. Those tasks include "ordinary inquiries incident to the traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (citing *Delaware v. Prouse*, 440 U.S. 648,

658–660 (1979)). The Court noted that these checks all "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operating safely and responsibly." *Id.*

The district court thus erred in concluding that the check with the FBI is not just one of the "ordinary inquiries incident with the [valid] traffic stop." *Id.* Because Meshal was on the No Fly List of suspected terrorists, it was entirely reasonable for the officers to verify with the FBI that they should allow Meshal to continue on in his semi-truck to and from the Super Bowl— arguably the most visible and high-target event on the American calendar. This verification is a key part of the officers' obligation to ensure that vehicles on the road are being operated responsibly. *Id.* It is no different from a routine inquiry to see if a driver has an outstanding warrant.

## B.   The officers are at the very least entitled to qualified immunity.

The officers are entitled to qualified immunity because they had "arguable reasonable suspicion" to justify extending the stop. *Jackson v. Sauls*, 206 F.3d 1156, 1165–66 (11th Cir. 2000). "When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop."

*Id.* And, as explained above, Meshal must produce clearly established law showing that the officers' actions violated his Fourth Amendment rights.

The district court committed a fundamental error in its qualified immunity analysis. Despite holding that "a materially similar case" clearly established that the officers violated the Fourth Amendment when they detained Meshal and searched his truck, the district court cited no such cases. It pointed to *Govan v. City of McIntyre*, 2018 WL 3762997 (M.D. Ga Aug. 8, 2018), but a district court case cannot clearly establish law. *See Griffin Indus.*, 496 F.3d at 1199. Nor did that case not involve the No Fly List (consisting of people against whom intelligence officials have a reasonable suspicion of terrorist activities) or a truck driver returning from a delivery to the Super Bowl. The district court thus did not discuss a single case (much less an authoritative case from this Court or the Supreme Court) clearly establishing a similar situation to be a Fourth Amendment *violation. See* Doc. 36 at 26–27.

Instead, the district court merely referenced the general rule "that a detention made without reasonable suspicion or probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures." Doc. 36 at 25 (citing *Skop v.*

*City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007); *Illinois v. Caballes*, 543 U.S. 403 (2005); *United States v. Purcell*, 236 F.3d 1274 (11th Cir. 2001). None of these cases present situations "materially similar" to the traffic stop here.

In citing precedent for general rules, the district court ignored the Supreme Court's *repeated* admonition that district courts must not define "clearly established law at a high level of generality." *City of Escondido*, 139 S. Ct. at 503; *see also Wesby*, 138 S. Ct. at 590; *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Wardynski*, 871 F.3d 1203. No doubt, an officer generally cannot detain someone without reasonable suspicion, but without factually similar precedent to assess *this* case, a district court cannot determine whether a reasonable officer would conclude that reasonable suspicion was lacking in the first place.

What's more, the Supreme Court has repeatedly stressed the importance of specificity in Fourth Amendment qualified immunity analysis. *City of Escondido*, 139 S. Ct. at 503. "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." *Id.*; *see also Wesby*, 138 S. Ct. at 590. Yet the district court provided only

broad Fourth Amendment principles without pointing to any case law from either this Court or the Supreme Court that would have informed the officers that their actions in the specific context of this case were clearly unlawful.

In fact, in the district court even Meshal never tried to point to a materially similar case that clearly established that his Fourth Amendment rights were violated. Doc. 21 at 19. He argued only that "broader, clearly established principles" made the officers aware that their conduct was unlawful. *Id.* In other words, Meshal relied on the "obvious clarity" of the general Fourth Amendment reasonableness principle to argue that the officers should have known they could not detain him or search his truck. But "obvious clarity" cases are a "narrow exception"—they are "rare and don't arise often." *King v. Pridmore*, 961 F.3d at 1146 (quotations omitted). Furthermore, "[i]n light of the rarity of obvious clarity cases, if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate." *Id.* "Notwithstanding the availability of the obvious clarity exceptions, this Court has observed on several occasions that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.*

24

(citing *Corbitt*, 929 F.3d at 1312) (alteration adopted and quotation omitted)).

Of course, all reasonable officers should be aware of general Fourth Amendment principles—that they need reasonable suspicion or probable cause to detain a driver, and that they cannot conduct a warrantless search of a driver's vehicle without probable cause. But these general rules could not have informed the officers that their actions in the context of this case—involving someone who had been previously arrested for driving on a suspended license, who was on the No Fly List of suspected terrorists, and who was driving a truck back from making a delivery to the Super Bowl—were clearly unlawful. And cases citing general principles do not qualify as "materially similar" cases that can clearly establish law and overcome qualified immunity.

Simply put, even *assuming* that the officers violated the law—thought they did not—there is no *clearly established law* that establishes as much, and the district court erred in denying qualified immunity.

25

## II. The district court should have granted the officers qualified immunity with respect to their search of the truck.

### A. The district court applied the wrong legal standard when it held that the officers lacked probable cause.

Officers may search a vehicle during a traffic stop when they have probable cause to believe that "contraband or evidence of a crime is present." *Braddy*, 11 F.4th at 1312. "In evaluating whether there is probable cause to conduct a search, courts look to the totality of the circumstances," *id.*, and ask "whether a reasonable officer *could* conclude that there was a substantial chance of criminal activity." *Washington v. Durand*, 25 F.4th 891, 899 (11th Cir. 2022) (alterations adopted) (emphasis added).

But the district court improperly held that the officers lacked probable cause because they failed to produce "known facts and circumstances [] sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime *will* be found." Doc. 36 at 21. As this Court recently held, while some older cases used that language—"requir[ing] an affirmative belief that the suspect had already engaged in or was engaging in a criminal offense"—the "correct legal standard" for the probable cause inquiry is "whether a reasonable officer *could* conclude … that there was a substantial chance of criminal activity." *Durand*,

26

25 F.4th at 902 (citing *Wesby*, 138 S. Ct. at 588). Because the district court applied the wrong legal rule, it imposed a "more demanding" standard than the correct standard requires and thus wrongly concluded that the officers failed to establish probable cause. *Id.* at 899.

A straightforward application of the correct standard to the facts here shows that the officers did have probable cause to search Meshal's truck. "[I]nstead of focusing on a single piece of evidence in isolation and dismissing any evidence with an innocent explanation," the district court should have recognized that in the "totality of the circumstances" the various facts fit together—the trip to the Super Bowl site to make a large delivery, his former arrest, and the FBI's determination of reasonable suspicion that Meshal would be involved in terrorist activities— and they pointed to a significant likelihood that Meshal was carrying contraband or evidence of criminal activity. *Id.* at 902. These converging circumstances are sufficient that a reasonable officer *could* conclude that there was a probability or substantial chance of criminal activity. *Wesby*, 138 S. Ct. at 588.[1]

---

[1] Meshal also has a claim for injunctive relief against Christopher Wright—the Commissioner of the Georgia Department of Public

27

### B. The officers are at least entitled to qualified immunity because they had arguable probable cause to search.

But again, for qualified immunity purposes, the officer here did not need *actual* probable cause. Rather, they are entitled to qualified immunity if they had just arguable probable cause. *Lee v. Ferraro*, 284 F.3d at 1199. Thus, the inquiry here, which the district court failed to do, is whether the officers "reasonably could have believed that probable cause existed, in light of the information the officer[s] possessed." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).

The district court again relied on the "a materially similar case" approach to hold that it was clearly established that the officers violated the Fourth Amendment when they searched the truck, but it again cited no such cases. *See Griffin Indus.*, 496 F.3d at 1199. While it mentioned a district court decision and an unpublished Eleventh Circuit case in which the courts held that arguable probable cause *was fully developed* (again, such decisions categorically cannot clearly establish law), it did not discuss a

---

Safety. However, if this Court finds no Fourth Amendment violation, it can also dismiss those claims against the Commissioner. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) (an "ongoing and continuous violation of federal law" is required to invoke the *Ex Parte Young* exception.)

single case (much less an authoritative case from this Court or the Supreme Court) clearly establishing a similar situation to be a Fourth Amendment *violation. See* Doc. 36 at 26–27.

Instead, the district court (again) merely referenced the general Fourth Amendment rule that "officers cannot search a vehicle absent probable cause." *Id.* at 26 (citing *Maryland v. Dyson*, 527 U.S. 465 (1999). The district court (again) ignored the Supreme Court's *repeated* admonition that district courts must not define "clearly established law at a high level of generality." *City of Escondido*, 139 S. Ct. at 503; *see also Wesby*, 138 S. Ct. at 590; *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Wardynski*, 871 F.3d 1203.

Nor could the general principle that searches require probable cause have informed the officers that their actions in the context of this case—involving someone who had been previously arrested for driving on a suspended license, who was on the No Fly List of suspected terrorists, and who was driving a truck back from making a delivery to the Super Bowl—were clearly unlawful. When the "case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. Simply put, even *assuming* that the officers violated the law—thought they did not—there is no *clearly*

*established law* that establishes as much, and the district court erred in denying qualified immunity.

## CONCLUSION

For the reasons set out above, this Court should reverse the judgment of the district court.

Respectfully submitted.

<u>/s/ *Rodney Atreopersaud*</u>

Christopher M. Carr
  *Attorney General of Georgia*
Loretta Pinkston-Pope
  *Deputy Attorney General*
Susan E. Teaster
  *Sr. Asst. Attorney General*
Rodney H. Atreopersaud
  *Assistant Attorney General*

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3627
ratreopersaud@law.ga.gov

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 7095 words as counted by the word-processing system used to prepare the document.

/s/ *Rodney Atreopersaud*
Rodney H. Atreopersaud

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2023, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.


/s/ *Rodney Atreopersaud*
Rodney H. Atreopersaud